Michael Orozco, Esq.
744 Broad Street
Suite 1901
Newark, NJ 07102
973 735 2683
Attorneys for Defendant

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA

v.

PEDRO PEREIRA

Case No: 11-40118

Honorable James Shadid

## DEFENDANT'S OMNIBUS MOTION

Submitted by,

BAILEY & OROZCO, LLC
Michael Orozco, Esq.
744 Broad Street, Suite 1901
Newark, NJ 07102
973 693 4408

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...........................................................................ii

TABLE OF CITATIONS................................................................. iii-v

FACTS.....................................................................................................1

LEGAL ARGUMENT ...........................................................................4

I.      THE CENTRAL DISTRICT OF ILLINOIS LACKS JURSDICTION AND
        THIS MATTER SHOULD BE DISMISSED.............................................4

II.     THE SEARCH AND SEIZURE OF ITEMS TAKEN FROM DEFENDANT
        AT THE TIME OF HIS ARREST WAS UNCONSTITUTIONAL AND
        MUST BE SUPPRESSED...............................................................6

III.    THE SEARCH AND SEIZURE OF ITEMS FOUND AT DEFENDANT'S
        RESIDENCE THREE MONTHS AFTER HIS ARREST CANNOT
        BE JUSTIFIED AS PURSUANTTO A SEARCH WARRANT BECAUSE
        THE WARRANT LACKED PROBABLE CAUSE.................................10

        A.      THE SEARCH WARRANT EXECUTED AT THE DEFFENDANT'S
                RESIDENCE LACKED PROBABLE CAUSE AND/OR WAS
                "STALE"....................................................................11

        B.      THE GOOD FAITH EXCEPTION DOES NOT APPLY...................13

IV.     DEFENDANT MOVES TO COMPEL THE GOVERNMENT TO PROVIDE
        DISCOVERY...........................................................................14

V.      DEFENDANT MOVES TO COMPEL THE PRODUCTION OF THE GRAND
        JURY MINUTES.......................................................................15

CONCLUSION ........................................................................17

## CITATIONS

Beck v. Ohio, 379 U.S. 89 (1964)...................................................................10

Brinegar v. United States, 338 U.S. 160 (1949)...............................................10

Carroll v. United States, 267 U.S. 132 (1925)..................................................10

Douglas Oil Co. v. Petrol Stops NW, 441 U.S. 211, 99 S. Ct. 1667 (1979)........................15

Franks v. Delaware, 438 U.S. 154 (1978).........................................................13

Horton v. California, 496 U.S. 128 (1990)........................................................10

Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ...........................9

Maryland v. Garrison, 480 U.S. 79 (1987)........................................................10

Michigan v. Tucker, 417 U.S. 433, 447, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974)...................12

Segura v. United States, 468 U.S. 796, 104 S.Ct. 3380 (1984).......................................8

Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577 (1979)...........................................8

United States v. Burgard, 2012 WL 1071706 (C.A. 7 Ill.).........................................8

United States v. Cabrales, 524 U.S. 1 (1998).....................................................5

United States v. Forsythe, 560 F.2d 1127 (3d Cir.1977)..........................................11

United States v. Garcia, 528 F.3d 481 (7th Cir. 2008)............................................13

United States v. Harvey, 2 F.3d 1318 (3d Cir.1993).............................................11

United States v. Hawkins, 2009 U.S. Dist. LEXIS 23543 (N.D.I. 2009).........................15

United States v. Hodge, 246 F.3d 301, 305 (3rd Cir. 2001)........................................13

United States v. Jacobson, 466 U.S. 109, 104 S.Ct. 1652 (1984).................................7,8

United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993)......................................11

United States v. Leon, 468 U.S. 897, 104 S.Ct. 3430 .........................................12, 13

United States v. Mahkimetas, 991 F.2d 379 (7th Cir. 1993).......................................6

United States v. Martin, 157 F.3d 46 (2d Cir.1998)……………………….…...…………8

Illinois v. McArthur, 531 U.S. 326, 121 S. Ct. 946 (2001)………………….……..….……7

United States v. McCall, 740 F.2d 1331 (4th Cir.1984)……………………...…………12

United States v. McNeese, 901 F.2d 585 (7th Cir.1990).   ………………………....…11,12

United States v. Peters, 791 F.2d 1270 (7th Cir.1986) (overruled on other grounds)…….…..…9

United States v. Place, 462 U.S. 696, 103 S. Ct. 2637  (1983)………………………...…………7

United States v. Ross, 456 U.S. 798 (1982)……………………………………....…10

United States v. Royer, _ F.3d ~ 2008 WL 5235844  (2d Cir. NY)………………………...5

United States v. Saavedra, 223 F.3d 85 (2d Cir. 2000)……………………………...……..4,5

United States v. Shabani, 513 U.S. 10 (1994)……………………………………..……6

United States v. Smith, 198 F.2d 377 (2d Cir. 1999)……………………………………5

Gates v. Illinois , **462 U.S. 213** (103 S.Ct. 2317, 76 L.Ed.2d 527)…………………………11

United States v. Tehfe, 722 F.2d 1114 (3d Cir.1983)………………………………11,12

United States v. Peltier, 422 U.S. 531, 95 S.Ct. 2313 (1975) …………………………12, 13

United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157 (1982)………………………...…………13

## CONSTITUTIONAL CITATIONS AND STATUTES

U.S. Constitution, Art. III, sec. 2, ci. 3. ………………………………………………4

U.S. Constitution, Amend. IV…………………………………………………….…...10

U.S. Constitution, Amend. VI. …………………………………………………..………4

18 U.S.C. §3237………………………………………………………………….……6

21 U.S.C. 841(a)(1) and 841(b)(1)(B)……………………………………….….………5

## **RULES**

Federal Rule of Criminal Procedure 6(e)(3)(E)(i)...................................................15

Federal Rule of Criminal Procedure 12(b)(3)(B)..................................................1

Federal Rule of Criminal Procedure 18.................................................................4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Case No. 11-40118 |
| | ) | Judge: HONORABLE JAMES SHADID |
| | ) | |
| PEDRO PEREIRA | ) | DEFENDANT'S OMNIBUS MOTION |

NOW COMES, Defendant, PEDRO PEREIRA, by and through counsel, Michael A. Orozco, and respectfully moves this Honorable on Defendant's Omnibus Motion pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), 18 U.S.C. §3237, and the Fourth Amendment of the United States Constitution to dismiss the Indictment, and in support states as follows:

## FACTS

On December 8th, 2011, co defendant David St. John Helsene was travelling on Interstate 80 through Henry County, Illinois, in a vehicle registered in his wife's name. At approximately 9:23 pm, Helsene was stopped by Trooper Sean C. Veryzer due to an obstructed license plate. The location of the stop, Geneseo, Illinois, is some 30 miles from the Illinois/Indiana border. During the stop Trooper Veryzer noted certain indicators for criminal activity and questioned Helsene regarding his route of travel. Though he was the only passenger, the vehicle had a bik rack with several bikes on it (the obstruction precipitating the stop) as well as two kayaks mounted to the hood of the car. Helsene indicated to the trooper that he was coming from California and on his way to Michigan. A K-9 unit arrived on the scene and conducted a free air sniff of the exterior of Helsene's vehicle, wherein the K-9 allerted his handlers to the presence of illegal narcotics. At approximately 9:54 pm Helsene was read his Miranda rights and agreed to answer trooper Veryzer's questions. Upon questioning Helsene if he would be willing to deliver the load of illegal narcotics Helsene inquired as to the details of a controlled delivery. Helsene

1

subsequently agreed to allow the trooper and members of the Geneseo Police Department (hereinafter "GDP") to relocate the vehicle to the GDP. After arrival at the GDP a search revealed, among other things, 148 pounds of marijuana packaged in plastic wrapping contained within the kayaks on the top of his vehicle.

Special Agent John Clark and Special Agent Thatcher then arrived at the scene to interview Mr. Helsene. Mr. Helsene subsequently agreed to participate in a controlled delivery of the marijuana to its original destination.[1] The first interview of Helsene resulted in his providing information about deliveries of an unspecified amount of marijuana to a location in New Jersey. In sum and substance, Helsene states that he was recruited by an individual in California named Ken Clarke for the purposes of making deliveries of marijuana from California to the East Coast. Helsene states that he would pick up the marijuana in California and then transport it to a location in Morristown, New Jersey. Helsene further informed law enforcement that "each time he arrived at said residence he was met by different individuals who removed the kayak's from his vehicle and then provided him with payment ($10,000) for transporting the marijuana from CA to Morristown, NJ." Helsene did not, at any point in the first interview, provide any identifying information for Defendant Pereira. Subsequently, during a de-briefing in Philadelphia on or about December 13, 2011 shortly before the controlled delivery, Helsene informed DEA agents that he had not been truthful as he allegedly 'feared for his safety.'

Helsene informed DEA agents that he had been to the location in Philadelphia where the controlled delivery was to take on at least two occasions. For the first time Helsene identifies a person from New Jersey whose named 'P' and who is allegedly a part of the conspiracy as alleged by the Government in the instant matter. After the controlled delivery and arrest of

---

[1] The narrative section of the trooper's report mentioned a DVD 07-11-1487 (Exhibit #6), which will be addressed later in this motion.

2

another alleged co-conspirator in Philadelphia[2], Helsene contacts Mr. Clark in California who directs Helsene to contact 'P'. As evidenced by recorded phone calls between 'P' and Helsene, they arrange for a time and place to meet where 'P' is to provide Helsene with 'fifty bucks.' At no point did Helsene or "P" state what the 'fifty bucks' was in payment for. At approximately 6:15 pm on December 15th, 2011, Helsene met with 'P', later identified as Defendant Pereira, at a location found on Route 22 in Hillside, New Jersey. Defendant Pereira allegedly provided Helsene with a locked tool box containing an amount of US currency later determined to be $50,000.00, which was immediately seized. DEA agents also seized and confiscated Defendants i-phone. At no point during or subsequent to his arrest did Defendant Pereira make any statement which could be considered against his interest. At no point did Helsene, during his time in Illinois, have any conversation with Defendant Pereira. At no point is there any evidence that any other alleged co-conspirator had a conversation with Defendant Pereira while he was located within the jurisdiction of Illinois, or vice versa. At no point did Defendant Pereira consent to the search and seizure of any times taken at the time of his arrest.

On or about February 2nd, 2012, the United States Attorneys Office for the Central District of Illinois provided counsel for Defendant Pereira its Rule 16 discovery. It consisted of 47 pages of material, of which 5 pages contain pictures, there is one report from state law enforcement, two reports by federal agents, a contract for the purchase of a vehicle in January 2011[3], one CD containing roughly 16 phone calls with Helsene, and two additional CDs containing Cellbrite forensic programs and a data extraction spreadsheet for Defendant's i-phone. The cover letter provides that the items from the i-phone were seized as a result of a

---

[2] That defendant, Damon Peter Lee, is not charged in this indictment but has been indicted for the same offense as Defendant Pereira, within the exact same dates of the offense being committed and the same weight, under Criminal No. 12-40014 in the Central District of Illinois.
[3] Which predates by at least two months the time claimed in the indictment in which the conspiracy took place.

search warrant. That warrant has never been provided to my office. On or about March 6th, 2012, law enforcement entered the former residence of defendant Pereira located in Union, New Jersey, accompanied with a search warrant that is attached hereto as **Exhibit A**. As a result of their search of the house, agents removed, among other things, numerous bank statements for accounts under the name of defendant's brother, Jimmy Pereira, as well as joint accounts held in the names of Defendant and his parents. Shortly after the execution of the warrant my office received seizure notices from the Drug Enforcement Administration regarding the aforementioned accounts as well as a vehicle registered under Defendant Pereira's name and purchased in January 2011. On or about April 26th, 2012, I served upon counsel for the Government, John Mehochko, via facsimile and electronic mail a request for certain documents and evidence. As of the date of the submission of this motion there has been no response.

**LEGAL ARGUMENT**

I.     **THE CENTRAL DISTRICT OF ILLINOIS LACKS JURISDICTION AND THIS MATTER SHOULD BE DISMISSED.**

At the outset it should be noted that the issue of venue in criminal cases is one of constitutional dimension. Article III requires that "[t]he Trial of all Crimes...shail be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, sec. 2, ci. 3. The Sixth Amendment requires that "...the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed...." U.S. Const. amend. VI. *See generally,* <u>United States v. Saavedra</u>, 223 F.3d 85, 88 (2d Cir. 2000). In addition Rule 18 of the Federal Rules of Criminal Procedure requires that " ...the government must prosecute an offense in a district where the offense was committed." FRCP Rule 18.

The relevant venue inquiry as to where the crime was committed "...must be determined from the nature of the crime alleged and the location of the act or acts constituting it." <u>United States v. Cabrales</u>, 524 U.S. 1, 6-7 (1998). In this regard, the example of an armed robbery was so apparent that the Second Circuit cited it as an example of an easily resolvable venue question: "For some criminal violations, the unitary character of the acts constituting the crime renders its *locus delicti* obvious. For example, a trial for armed robbery would be properly venued only in the district where the robbery was committed." <u>United States v. Saavedra,</u> 223 F.3d at 88-89. The Government bears the burden of proving by a preponderance of the evidence that venue was proper as to each individual count in an indictment. *See* <u>United States v. Royer,</u> _ F.3d ~ 2008 WL 5235844 at p. 4 (2d Cir., decided *12/17/08)*[4]; <u>United States v. Smith</u>, 198 F.2d 377, 382 (2d Cir. 1999).

According to the first count of the indictment, from in or about April of 2011 to December 13[th,] 2011, Defendant Pereira with defendant Helsene and other persons, known and unknown, did and intentionally distribute and possess with intent to distribute at least 100 kilograms of marijuana in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(B). Yet Defendant Pereira has absolutely no ties to the Central District of Illinois. There is no proof or evidence in my possession as provided by the United States Attorneys Office which shows that any of the alleged prior transactions or deliveries went through the Central District of Illinois. The fact that Helsene never even mentions anything about anyone who is, arguably, Defendant Pereira, until he is in Philadelphia further lends credence to the arguments contained herein.

Moreover, other than the fact that Helsene was driving through an area within the Central District of Illinois when he was pulled over and arrested, no known alleged co-conspirator has had any contact within the District with Helsene at any time other than when he became a

---

[4] A copy of this unpublished opinion is being provided by way of a separate submission to the court.

Government witness.  Clearly, once Helsene agreed to cooperate he can no longer be deemed a co-conspirator.  ”The crime of conspiracy is the agreement itself.”  United States v. Shabani, 513 U.S. 10, 11 (1994).  The “agreement must exist among coconspirators, that is, those who actually intend to carry out the agreed upon criminal plan.”  United States v. Mahkimetas, 991 F.2d 379, 383 (7th Cir. 1993).  A defendant in a criminal prosecution cannot conspire with an undercover government agent or a government informant.  Id.  As Defendant Pereira cannot conspire with Helsene, and he had no contact whatsoever with the Central District of Illinois, this matter should be dismissed.[5]

The Government will most likely argue that Helsene, by driving through the Central District of Illinois, triggered jurisdiction once he was stopped and arrested.  The problem with that argument is that it still does not sufficiently connect Pereira to the Central District.  While recognizing that an offense begun in one jurisdiction and completed in another “may be prosecuted in any jurisdiction where the offense was begun, continued, or completed”, 18 U.S.C. Section 3237(a), there is not one shred of evidence that shows any contact between Pereira and the Central District, or any other co-conspirator and the central district, sufficient to warrant jurisdiction.  Any argument by the Government that the prior alleged deliveries between Helsene and co-conspirators must also fail because of the complete and total lack of any evidence of contacts between Pereira and the Central District.

## II. THE SEARCH AND SEIZURE OF ITEMS TAKEN FROM DEFENDANT AT THE TIME OF HIS ARREST WAS UNCONSTITUTIONAL AND MUST BE SUPPRESSED.

At the time of his arrest Defendant Pereira is alleged to have been in possession of a

---

[5] In the alternative Defendant Pereira moves for a copy of the grand jury minutes.

6

locked tool box containing $50,000.00 in cash.    According to the DEA reports that box and

money contained therein have been identified as N-3 and N-2, respectively.    The contents of the

tool box were opened in front of Defendant Pereira, over his objections.    At no point did any law

enforcement obtain the consent of Pereira to open the box, and at no point was a search warrant

sought which would have permitted law enforcement to open the box.    Defendant was also in

possession of an i-phone, which was also searched by the Government.

       According to the Government's initial disclosures through discovery, Defendant's i-

phone was searched as a result of a search warrant.    To date, the application and supporting

affidavit have not been provided to this office.    There is no indication in the Government's initial

disclosures as to where the i-phone was found, what condition it was in, when it was searched,

etc.

       In general, "seizures of personal property are 'unreasonable within the meaning of the

Fourth Amendment ... unless ... accomplished pursuant to a judicial warrant.' " Illinois v.

McArthur, 531 U.S. 326, 330, 121 S. Ct. 946 (2001) (quoting United States v. Place, 462 U.S.

696, 701, 103 S. Ct. 2637 (1983)).    A seizure occurs when there is some meaningful interference

with an individual's possessory interests in that property.    United States v. Jacobsen, 466 U.S.

109, 113 (1984).    An officer may temporarily seize property without a warrant, however, if she

has "probable cause to believe that a container holds contraband or evidence of a crime" and "the

exigencies of the circumstances demand it or some other recognized exception to the warrant

requirement is present." Place, 462 U.S. at 701.

       Even a permissible warrantless seizure, according to Place above, must comply with the

Fourth Amendment's reasonableness requirement. Thus, the Supreme Court has held that after

seizing an item, police must obtain a search warrant within a reasonable period of time. See, e.g.,

Segura v. United States, 468 U.S. 796, 812, 104 S.Ct. 3380 (1984) ("[A] seizure reasonable at its

inception ...... based on probable cause may become unreasonable as a result of its duration.").

The police needed within a reasonable time to obtain a warrant before they could undertake a

new search and seizure—that of the contents of the cell phone." The seizure of Defendant's cell

phone, without an immediate application for a search warrant, renders any and all evidence

derived therefore inadmissible. "The longer the police take to seek a warrant, the greater the

infringement on the person's [possessory interest will be, for the obvious reason that a longer

seizure is a greater infringement on possession than a shorter one. But unnecessary delays also

undermine the criminal justice process in a more general way: they prevent the judiciary from

promptly evaluating and correct improper seizures." United States v. Burgard, 2012 WL

1071706 (C.A. 7(ILL)). See also, United States v. Martin, 157 F.3d 46, 54 (2d Cir.1998)

("[W]here officers have probable cause to believe container contains contraband, it 'may be

seized, at least temporarily, without a warrant.' ") (quoting in parenthetical United States v.

Jacobson, 466 U.S. 109, 121, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). No other recognized

exception to the warrant requirement covered the police detention of the contents of Defendant's

phone, and any delay would be unjustified.

Equally applicable is the seizure of the tool box at the time of the Defendant's arrest and

it's subsequent search. Applying the aforementioned case law to the facts, the only additional

issue to address is the Defendant's expectation of privacy. When considering whether an

individual has a legitimate expectation of privacy, a court must consider: (1) whether the

individual, by his conduct, has exhibited an actual (subjective) expectation of privacy; and (2)

whether the individual's subjective expectation of privacy is one that society is prepared to

recognize as reasonable. Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220

(1979) (citing <u>Katz v. United States</u>, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).  In

<u>United States v. Peters</u>, 791 F.2d 1270 (7th Cir.1986) (overruled on other grounds), the Seventh

Circuit had occasion to address the issue of when a defendant has a subjective privacy interest in

a piece of property.  Therein the court identified the following factors as key to determining

whether an individual has a legitimate privacy interest in a given piece of property:

> (1) whether the defendant had a possessory [or ownership] interest
> in the thing seized or the place searched, (2) whether he had the
> right to exclude others from that place, (3) whether he exhibited a
> subjective expectation that it would remain free from governmental
> invasion, (4) whether he took normal precautions to maintain his
> privacy, and (5) whether he was legitimately on the premises.

<u>791 F.2d at 1281.</u>  Though the term 'premises' is used, it is interchangeable with property and

objects and encompasses a person's possessory interest in objects and movable property.

In the instant matter, the property that was searched was (1) locked; (2) was still within

the defendant's control when he was arrested; (3) it is clear Defendant intended to exclude others

as the box was locked; (4) exhibited a subjective expectation that the box would remain free

from invasion when he objected to it being opened; (5) clearly took precautions to maintain his

privacy by locking the box.  The fact is that the box was locked because its contents were not

intended for anyone else but the holder of the key.  Neither the Government nor defendant

Helsene possessed such a key, thus the seizure and subsequent search of the tool box was

unconstitutional as Defendant Pereira clearly evidenced an expectation of privacy.

### III.    THE SEARCH AND SEIZURE OF ITEMS FOUND AT DEFENDANT'S RESIDENCE THREE MONTHS AFTER HIS ARREST CANNOT BE JUSTIFIED AS PURSUANT TO A SEARCH WARRANT BECAUSE THE WARRANT LACKED PROBABLE CAUSE.

The Fourth Amendment to the United States Constitution provides that no search warrant shall issue without a showing of probable cause for the search. *U.S. Const., amend. IV.* "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that "an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)); Beck v. Ohio, 379 U.S. 89, 91 (1964)). "The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate." Maryland v. Garrison, 480 U.S. 79, 85 (1987)

"The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.'" Maryland v. Garrison, 480 U.S. 79, 84 (1987). If the "scope of the search exceeds that permitted by the terms of a validly issued warrant... [the search and any] subsequent seizure [are] unconstitutional." Horton v. California, 496 U.S. 128, 140 (1990).

Thus, the scope of a lawful search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase." United States v. Ross, 456 U.S. 798, 824 (1982). In the instant matter there was no indication, none, other than the boilerplate language of

10

the affidavits to justify the search warrant that the defendant had used any items found at his home.

**A.** **The search warrant executed at the Defendant's residence lacked probable cause and/or was 'stale'.**

Attached hereto as **Exhibit A** is the search warrant order.   A District Court Judge, when reviewing the issuance of a warrant by a magistrate judge, is required to apply and determine whether the magistrate who issued the warrant had a "substantial basis" for determining that probable cause existed. United States v. Harvey, 2 F.3d 1318, 1322 (3d Cir.1993). In so doing, the Court's must determine if a "practical, commonsense decision [was made] whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime [would] be found in a particular place." Gates v. Illinois, 462 U.S. 213 (103 S.Ct. 2317, 76 L.Ed.2d 527).  The decision of the magistrate "should be paid great deference." Harvey, 2 F.3d at 1322.  This, however, "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions." United States v. Tehfe, 722 F.2d 1114, 1117 (3d Cir.1983).  The Court need not determine whether probable cause actually existed, but only whether there was a substantial basis for finding probable cause." Hodge, supra, at 305.  In making this 'substantial basis' determination, the reviewing court confines itself to the fact that were before the magistrate judge, ie, the four corners of the affidavit, and does not consider information from other portions of the record. United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993).

Age of the information supporting a warrant application is a factor in determining probable cause. *See* United States v. Forsythe, 560 F.2d 1127, 1132 & n. 6 (3d Cir.1977); *see also* United States v. McNeese, 901 F.2d 585, 596 (7th Cir.1990). If too old, the information is stale, and

11

probable cause may no longer exist.  McNeese, 901 F.2d at 596. Age alone, however, does not determine staleness ... Rather, we must also examine the nature of the crime and the type of evidence. *See* United States v. Tehfe, 722 F.2d 1114, 1119 (3d Cir.1983), *cert. denied,* 466 U.S. 904, 104 S.Ct. 1679, 80 L.Ed.2d 154 (1984);  Forsythe, 560 F.2d at 1132; *see also* United States v. McCall, 740 F.2d 1331, 1335–36 (4th Cir.1984).

In the instant matter, nothing can be said regarding this being a continuing enterprise as no alleged activity has occurred since the latest date mentioned in the Government's indictment. Since Defendant Pereira was arrested on or about December 13th, 2011, and the search warrant executed at his residence was not executed until early March, there is clearly a reasonable basis to believe that any information supporting the affidavit for the warrant application was stale.

The Government will most assuredly argue that there was probable cause, but assuming that there is not and it is conceded, they may only argue that there was a good faith exception and thus the material is not subject to suppression.  The exclusionary rule is designed to deter police conduct that violates the constitutional rights of citizens. Leon, 468 U.S. at 919, 104 S.Ct. 3405. "The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right."  United States v. Peltier, 422 U.S. 531, 539, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975) (quoting Michigan v. Tucker, 417 U.S. 433, 447, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974)). By excluding evidence seized as a result of an unconstitutional search and seizure, "the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused."  *Id.*  Because the "purpose of the exclusionary rule is to deter unlawful police conduct," the fruits of an unconstitutional search should be suppressed if, despite the magistrate's authorization, an objectively reasonable, well-trained officer would have

known that the search violated the Fourth Amendment. Leon, 468 U.S. at 919, 104 S.Ct. 3405 (quoting Peltier, 422 U.S. at 542, 95 S.Ct. 2313). Concomitantly, suppression should not be ordered where an officer, acting in objective good faith, has obtained a warrant without probable cause because in such cases only marginal deterrent purposes will be served which "cannot justify the substantial costs of exclusion." Leon, 468 U.S. at 922, 104 S.Ct. 3430.

### B.  The Good Faith Exception does not apply.

The Supreme Court has held that " 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.' " United States v. Leon, 468 U.S. 897, 922, 104 S.Ct. 3430 (quoting United States v. Ross, 456 U.S. 798, 823 n. 32, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)). There are situations, however, where "an officer's reliance on a warrant would not be reasonable and would not trigger the [good faith] exception." United States v. Hodge, 246 F.3d 301, 305 (3rd Cir. 2001).   The Seventh Circuit has identified three such situations:  1) that the issuing judge abandoned the detached and neutral judicial role; (2) that the officer was dishonest or reckless in preparing the affidavit; or (3) that the warrant was so lacking in probable cause that the officer could not reasonably rely on the judge's issuance of it.  United States v. Garcia, 528 F.3d 481, 487 (7th Cir. 2008); see also Leon, 468 U.S. at 923, 104 S.Ct. 3430.

At this point this office is not in possession of the search warrant application and supporting affidavits, and I would request leave to supplement this portion of the brief upon receipt of same.  Counsel for Defendant Periera would further request that, upon receipt, and for good cause, Defendant may request a Franks hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).

## IV.  DEFENDANT MOVES TO COMPEL THE GOVERNMENT TO PROVIDE DISCOVERY

To date defendant, by and through counsel, has received exactly one discovery package. Nothing has been produced as a result of the warrant and search and seizure of items found at the Union, New Jersey, executed on or about March 6th, 2012. Defendant, by and through counsel, has requested copies of all items seized. The Defendant has further requested that the Government provide the following items:

1. Copies of the search warrant application, supporting affidavits, etc., for the Union, New Jersey property searched on or about March 6th, 2012.

2. Copies of all material seized as a result of the search warrant executed on March 6th, 2012.

3. Copy of the DVD identified in discovery as Exhibit 6 (DVD 07-11-1487).

4. The Model and Serial Numbers for the Garmin GPS seized on December 8th, 2011, at the time of Helsene's arrest.

5. Give to the Defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial. The summary provided must describe the witnesses' opinions, the bases and reasons for those opinions and the witnesses' qualifications.

6. The Model and Serial number for the Garmin GPS device found in the possession of Helsene on the date of his arrest, December 8th, 2011.

Without these items the defendant cannot adequately mount a defense. By way of a separate correspondence to the US Attorneys Office, dated April 26th, 2012, the above listed items were requested to be produced and/or made available for inspection and copying immediately after Defendant's bail motion scheduled for May 1st, 2012. In the event that the

material requested above and in my correspondence is not provided I would request that the Court order the Government to produce the aforementioned material.  In the event that it is timely provided I will advise the court of same and withdraw this portion of Defendant's motion.

## V. DEFENDANT MOVES TO COMPEL THE PRODUCTION OF THE GRAND JURY MINUTES

Pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(i) the Defendant in the above captioned case is requesting that the court order the Grand Jury minutes to be turned over to the defense.  For the purposes of this brief the defense will assume familiarity with the facts as set forth previously in the motion to dismiss for lack of jurisdiction.  Under Rule 6 grand jury minutes may be turned over by a judge "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  In interpreting this rule courts have stated that when the Defendant is seeking the Grand Jury's minutes that he "bears the burden of establishing that: (1) the materials sought are needed to avoid a possible miscarriage of justice; (2) the need for disclosure is greater than the need for secrecy; and (3) the request is structured to cover only those materials that are absolutely necessary to avoid an injustice."   United States v. Hawkins, 2009 U.S. Dist. LEXIS 23543 (N.D.I. 2009). (citing Douglas Oil Co. v. Petrol Stops NW, 441 U.S. 211, 222, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979).  In the instant case all three prongs of this standard are met, therefore it is respectfully requested that the court order for the minutes to produced.

For example, Defendant Pereira is charged with conspiracy, however, the only known or identified co-conspirator at this point is the co-defendant, David St. Helsene.  As previously cited, a defendant cannot conspire with a government informant.  The moment that Helsene agreed to be a Government witness, any alleged conspiracy between them (Pereira and Helsene) ceased to exist.  This is no guaranty that this was properly explained to the grand jurors, and

15

would thus result in jurisdictional entrapment based upon the Government's failure to properly advise them of same. Thus, this satisfies the first prong of the test. As to the second prong, the fact that Defendant Periera is subject to 20 years of prison based upon the allegations and indictment outweighs the need for secrecy. Finally, as to the third prong, I would request that, if the entire grand jury minutes are not ordered to be produced, that just those minutes which cover the instructions to the grand jury regarding the conspiracy charges and necessary elements therein be produced.

Because of this the Defendant must be able to see the minutes of the Grand Jury in order to properly defend the charges levied against him. Furthermore, although the regularity of the grand jury is generally assumed within the law here that should not be the case. Defendant Pereira is a resident of the state of New Jersey who's actions were taken entirely in the state of New Jersey and was charged by a court in Illinois, indicted by a Grand Jury in Illinois, led by a Prosecutor from Illinois. This is not the normal situation where the Grand Jury is supposed to consist of one's peers, not of people sitting over 700 miles away from where Defendant Pereira took any alleged actions. Seeing these minutes would allow the defense to ensure that Defendant Pereira's rights were protected while he was being investigated by a Grand Jury.

**CONCLUSION**

As additional information and discovery becomes available, I would respectfully request leave of the Court to supplement the arguments and facts relied upon in this motion.  For the reasons previously stated, defendant moves this Court for the relief requested.

Respectfully submitted,

/s/ *Michael Orozco*
Attorneys for Pedro Pereira
Bailey & Orozco, LLC
744 Broad Street, Suite 1901
Newark, NJ 07102
(973) 693 4408
mao@bolegal.com

April 30th, 2012