E-FILED
Monday, 02 July, 2012  02:24:50 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 11-40118 |
| ) | |
| PEDRO M. PEREIRA and ) | |
| JIMMY PEREIRA, ) | |
| ) | |
| Defendants. ) | |

## O R D E R

On June 26, 2012, the Court conducted a hearing on Defendant, Pedro Pereira's ("Pedro") Omnibus Motion [#19] and a Supplement to that Motion [#37]. Jimmy Pereira ("Jimmy") joined in the Motion. The Government filed a written Response [#38] and evidence was presented and argument heard. The Defendants set forth four arguments: (1) venue is improper in the Central District of Illinois; (2) officers lacked probable cause to search and seize two cellular phones and a tool box taken during the arrest of Pedro; (3) the search warrant for the residence located in Union, New Jersey lacked probable cause; and (4) the Government should be compelled to turn over grand jury minutes to the Defendants. The Court finds that the Central District of Illinois is not a proper venue. As such, the remaining three issues will not be addressed. The charges are DISMISSED without prejudice to re-filing in a proper venue.

### Background

The following facts are taken from the parties' briefs and in-court testimony. On December 8, 2011, David St. John Helsene was driving a vehicle on Interstate 80 through Henry County, Illinois, located in the Central District of Illinois. Illinois State Trooper Sean Veryzer stopped the vehicle due to an obstructed license plate. After speaking with Helsene, called for a

k-9 unit, who conducted a free-air sniff of the exterior of the vehicle and alerted to the presence of illegal narcotics. Helsene was read his *Miranda* rights and agreed to speak with the trooper. Helsene indicated that he was delivering a load of narcotics from California to the East Coast. After arresting Helsene, the vehicle was impounded to the Geneseo Police Department, where a search of the kayaks uncovered 148 pounds of marijuana.

Helsene was interviewed by Special Agent John Clark and Special Agent Mark Thatcher and agreed to participate in a controlled delivery of the marijuana to its original destination. Helsene told the agents that he had previously been recruited by an individual in California named Ken Clarke, to deliver marijuana from California to Morristown, New Jersey. Helsene stated that he was met by different individuals in New Jersey who would unload the kayaks and provide him with money in exchange for transporting the drugs.

On December 13, 2011, Helsene informed agents in Philadelphia that he had been to a location in Philadelphia for a delivery on at least two occasions and mentioned a person by the name of "P" (Pedro), who was his contact in New Jersey. Helsene then made a controlled delivery in Philadelphia and a fellow co-conspirator was arrested. Helsene then contacted Clarke in California, who directed him to make contact with P, who would provide Helsene with "fifty bucks". When Helsene contacted Pedro, he informed him to "go to where you went last time." A residence on Balmoral Avenue in Union, New Jersey was referenced by Pedro. En route to get the money, Pedro changed the meeting location to a Burger King parking lot in Hillsdale, New Jersey. Pedro arrived in a black Cadillac and a tool box containing $41,000 cash was given to Helsene by Pedro. Both men were then arrested and agents seized two cellular phones from Pedro's vehicle, a gray iPhone and a Tracfone. Agent Thatcher testified during the hearing that the phones were searched incident to arrest and phone numbers, text messages and photos were

examined in the phone. Also, Agent Thatcher testified that the phones were kept on but put in "airplane mode" for fear that turning them off would erase any data on them and that allowing the phones to transmit a signal could allow someone to remotely erase the memory on the phones.

On December 15, 2011, agents returned to the Central District of Illinois with the phones in their possession. On December 19, 2011, a search warrant was signed for the phones and they were searched. The search revealed a large number of text messages sent to and received from a number confirmed to belong to Jimmy. The address registered to the phones owned by Jimmy was the residence which was subsequently searched in Union, New Jersey. The text messages also revealed what agents believed was code for various strands of marijuana and single letter names for individuals.

The investigation continued and in late January 2012, agents gained further information regarding drug ledgers maintained by Pedro and information corroborating that Pedro lived at the same residence as Jimmy in Union, New Jersey. On March 6, 2012, agents executed a search warrant on the residence and seized a number of items from the house.

## Discussion

The basic inquiry to determine whether venue is proper in a given place is to first look to whether there is any statutory directive on venue and in the absence thereof, as is the situation here, use a general guide consisting of the nature of the alleged crime and the act or acts constituting it. United States v. Muhammad, 502 F.3d 646, 652 (7th Cir. 2007) (*citing* United States v. Cabrelas, 524 U.S. 1, 6-7 (1998)). This is a model for analysis rather than a rigid test and takes into account the "defendant's acts, the elements and nature of the crime, the locus and effect of the criminal conduct, and the suitability of each district for suitable fact-finding." Id

(*citing* United States v. Reed, 773 F.2d 477, 481 (2nd Cir. 1985)).  It is also important to look to where the crime was intended to have consequences.  *See* Reed, 773 F.2d at 482 ("[P]laces that suffer the effects of a crime are entitled to consideration for venue purposes.  Such districts have an obvious contact with the litigation in their interest in preventing such effects from occurring."); United States v. Frederick, 835 F.2d 1211, 1215 (7th Cir. 1987) (in the context of a conspiracy "[p]roper venue is not limited to districts where the defendants were physically present when they committed unlawful acts.  So long as an overt act in furtherance of the conspiracy is intended to have an effect in the district where the case is finally brought, venue is proper.").

Applying these general principles this Court must determine whether the Central District of Illinois can serve as a proper venue for the federal criminal trial of Pedro Pereira and Jimmy Pereira in a manner consistent with guarantees of the Constitutional venue provisions.  In the context of a conspiracy count, it is established that venue is not limited to districts where the defendant's were physically present when they committed the unlawful acts.  So long as an overt act in furtherance of the conspiracy is intended to leave an effect in the district where the case is finally brought, venue is proper.  The Government relies on Muhammad in support of their position that physical presence is not required.

Clearly, the statement of co-defendant Helsene, of eight prior travels through the Central District, carrying marijuana in on direction and money upon the return would constitute overt acts of a conspiracy and arguably make the Central District of Illinois a proper venue.  That same rationale makes each state along Interstate 80, from California to New Jersey, arguably a proper

venue.[1] So, for venue purposes, there seems little question that a conspiracy existed and travel through the Central District of Illinois occurred. Therefore, the main question is one of intended effect, which this Court finds lacking in this District.

It is clear that this conspiracy started with picking up kayaks full of drugs in California, and exchanging them for money in Philadelphia and New Jersey. Accordingly, those are the venues in which the members of this conspiracy intended to have an effect. This District's connection with the conspiracy is minimal and it is clear that no one intended the marijuana to have an effect or consequences here. All efforts by all co-conspirators were intended to bring drugs from California to the East Coast for further distribution and consumption. The Central District of Illinois is tied to the conspiracy only by virtue of Helsene's arrest after which he became a government informant and could no longer be considered a co-conspirator.

Finally, this District's suitability for fact-finding is limited at best because none of the conspirators ever resided or conducted illegal activity in this District save that which has been already mentioned. Plus, from what could be gleaned from the testimony of Agent Thatcher, most, if not all law enforcement involved in the controlled buys in Philadelphia and New Jersey are from those areas and resources were expended in those areas and it appears most witnesses will come from there as well.

---

[1] Interstate 80 passes through the following cities (list not exclusive): San Francisco, CA, Sacramento, CA, Reno, NV, Salt Lake City, UT, Cheyenne, WY, Lincoln, NE, Des Moines, IA, Joliet, IL, South Bend, IN, Toledo, OH, Paterson, NJ

**Conclusion**

For the foregoing reasons, the Defendants' Motion[#19], as it pertains to dismissal of the charges for improper venue is GRANTED.

ENTERED this 29th day of June, 2012.

        /s/ James E. Shadid
James E. Shadid
Chief United States District Judge